UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERATION FOR AMERICAN IMMIGRATION REFORM<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>Defendant | Civil Action No. 23-2883 (TJK) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

**BACKGROUND** ........................................................................................................................ **1**

**LEGAL STANDARD** ................................................................................................................ **3**

**ARGUMENT**.............................................................................................................................. **3**

**CONCLUSION** .......................................................................................................................... **8**

i

Defendant United States Immigration and Customs Enforcement ("ICE" or "Agency"), through undersigned counsel, respectfully moves for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.

## BACKGROUND

On April 25, 2023, Plaintiff Federation for American Immigration Reform submitted a Freedom of Information Act ("FOIA") request to ICE requesting the following records:

1.  All emails from Kerry Doyle, Principal Legal Advisor, that references or mentions "deportations," from and including September 20, 2021 up to and including April 25, 2023.

2.  All emails from Kerry Doyle, Principal Legal Advisor, that references or mentions "prosecutorial discretion," from and including March 1, 2022 up to and including April 25, 2023.

Compl. ¶ 9, ECF No. 1.

On September 28, 2023, Plaintiff filed suit. *See generally id.* Defendant answered on December 14, 2023. Answer, ECF No. 9.

In the first joint status report filed by the parties, Defendant explained that it had identified 46,903 pages of potentially responsive records; however, that was an error. Jt. Status Rep. (Dec. 26, 2023), ECF No. 10. Defendant eventually clarified that it had identified 96,583 pages of potentially responsive records. Jt. Status Rep. (July 10, 2014), ECF No. 14. Between December 2023 and May 2025—a period of more than a year and four months—the joint status reports remained largely unchanged. The parties requested the ability to work on narrowing the scope of the request without the Court's involvement. *See* Jt. Status Reps., ECF Nos. 10-20.

The parties tried to either narrow the scope of the request or resolve the case entirely but were unsuccessful. For example, on February 29, 2024, Defendant contacted Plaintiff and explained how terms like "deportation" and "prosecutorial discretion" uncovered records of questionable relevance. *See* Email from Escher (Feb. 29, 2024, at 1:53 p.m.), ECF No. 22-3 at 8-9.

Defendant provided examples of briefings that were appearing in the searches. *Id.* When Defendant asked Plaintiff if it had any ideas about how to narrow the request, Plaintiff responded, "We're not concerned about a search being overly broad and returning things like what you attached below: IRLI can go through and determine which items we actually need once we have production." Email from Jaroslav (Apr. 30, 2024, at 10:20 a.m.), ECF No. 22-3 at 7.

And on January 27, 2025, Defendant contacted Plaintiff to see if it was still interested in the request in light of a new executive order. When Plaintiff submitted its FOIA request on April 25, 2023, a memorandum issued by Kerry Doyle, Principal Legal Advisor for ICE, was still effective. The memorandum was addressed to all Office of the Principal Legal Advisor attorneys and contained the subject *Guidance to OPLA Attorneys Regarding the Enforcement of Civil Immigration Laws and the Exercise of Prosecutorial Discretion*. *See* Mem. from Doyle (Apr. 3, 2022), https://www.ice.gov/doclib/about/offices/opla/OPLA-immigration-enforcement_guidance Apr2022.pdf. However, on January 20, 2025, the White House issued a new executive order that revoked Doyle's guidance entirely. *See Protecting the American People Against Invasion*, 2025 WL 244170 (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/ protecting- the-american- people-against- invasion/.

Defendant contacted Plaintiff and asked whether Plaintiff was still interested in the FOIA request. *See* Email from Escher (Jan. 27, 2025, at 12:52 p.m.), ECF No. 22-3 at 2-3. Defendant explained that the prior guidance from Doyle had been revoked entirely by the new executive order. *Id.* Defendant then followed up again with Plaintiff about the inquiry. *See* Email from Escher (Mar. 4, 2025, at 10:34 a.m.), ECF No. 22-3 at 2. Plaintiff appeared to have rejected the proposal. *See* Email from Jaroslav (Mar. 5, 2025, at 10:56 a.m.), ECF No. 22-3 at 1 ("We appreciate your offer and efforts but are unable to agree to your proposal for narrowing the scope of the search.").

Because the parties have not been able to narrow the scope of Plaintiff's request or resolve the case in other ways, Defendant moves for summary judgement because as written the request is not reasonably described.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 255-56.

In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

A request must reasonably describe the records sought. 5 U.S.C. § 552(a)(3)(A). The D.C. Circuit has identified three ways in which a request can fail the "reasonably describes" requirement. *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271-72 (D.D.C. 2022). "First, vague words and descriptions." *Id.* A request must allow agency staff "to determine precisely which records are being requested," and a request that "vaguely describes the requested documents does not suffice." *Id.* "Second, seeking difficult to locate records." *Id.* at *4. This analysis depends on whether agency employees can locate responsive

3

records "with a reasonable amount of effort." *Id.* (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)). Otherwise, an agency need not respond. *Id.* "Third, overly burdensome post-search efforts." *Id.* "Even when a request reasonably describes documents, the attendant burden of production can be so heavy that the agency need not respond." *Id.*

Here, Plaintiff's FOIA request fails to reasonably describe the records sought because of the third reason. As explained by the Pineiro declaration, the ICE FOIA Litigation Processing Unit's workload has increased such that as of June 2025, it is handling 186 active FOIA litigations, of which 98 litigations have monthly rolling productions. Pineiro Decl. ¶ 20, ECF No. 22-2. ICE's normal processing rate for cases in litigation is 500 pages or 5 minutes of media files, per month, per case. *Id.* This means, on average, the ICE FOIA Litigation Unit is currently processing approximately 49,000 pages of potentially responsive records per month. *Id.*

To meet its obligations for all cases in litigation by ensuring that all FOIA matters progress and each requester receives a response, the ICE FOIA Office typically cannot process more than 500 pages or 5 minutes of media files per month per case. *Id.* ¶ 23. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters. *Id.*

Responding to the Plaintiff's FOIA request in its current, broadly worded form would first require sifting through all search results to identify any potentially responsive records. *Id.* ¶ 25. ICE's search produced an overwhelming number of duplicative and non-responsive records. *Id.* As explained in the background section above, ICE has provided the Plaintiff with representative samples of the retrieved raw documents (not reviewed for responsiveness) to illustrate the nature of non-responsive records and the amount of work that would need to be undertaken by ICE FOIA before responsive records could be identified and processed for release, without further narrowing.

4

ICE provided Plaintiff with this sample via email on February 29, 2024. *Id.*; *see also* Email from Escher (Feb. 29, 2024, at 1:53 p.m.), ECF No. 22-3 at 8-9. Plaintiff responded, "We're not concerned about a search being overly broad and returning things like what you attached below: IRLI can go through and determine which items we actually need once we have production." Email from Jaroslav (Apr. 30, 2024, at 10:20 a.m.), ECF No. 22-3 at 7.

Requiring ICE to process the estimated 96,583 pages yielded in ICE's search would divert ICE FOIA's limited resources to Plaintiff's FOIA request at the expense of other FOIA requesters and is likely to incur additional liability for the agency with respect to unprocessed records in other cases. Pineiro Decl. ¶ 26. At a standard rate of 500 pages per month, it would take one ICE FOIA Office employee more than 16 years[1] to finish reviewing the combined 96,583 pages from the "deportations" and "prosecutorial discretion" search results. *Id.* ¶ 27. No ICE FOIA employee can be assigned solely to one case, as this would restrict their ability to manage the ICE FOIA Office's workload effectively. *Id.* It is essential for ICE FOIA employees to handle multiple cases to ensure a balanced distribution of production review. *Id.*; *see also Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272 ("Agencies respond to FOIA requests at taxpayer expense, and burdensome requests hinder an agency's ability to respond to other FOIA requests and to conduct its other statutory responsibilities. An agency should not need to spend so much time on one request (or multiple related requests from one requester) at the expense of its more critical duties.").

Additionally, processing this request as written would be costly. If ICE were to assign one GS-12, Step 1 employee, at the salary of $101,401.00 to review the records, allotting 10% of their workload to Plaintiff's FOIA request, it would cost ICE a total of more than $162,241.00 in salary

---

[1]     96,583 pages total divided by 500 pages a month is 193.166 months, which divided by 12 months a year is 16.1 years.

alone, per employee, over the 16 years it would take that one employee to complete the review and processing of the records, (i.e., [($101,401 x 16 years) x (10%)]). Pineiro Decl. ¶ 28. This figure does not account for the fact that the employee would generally receive pay increases as they climb the GS scale. *Id.*

Simply put, based on the numbers alone, this is an unreasonable task for Defendant, and the case law supports Defendant's argument. *Cf. Feds for Freedom v. Dep't of Def.*, Civ. A. No. 23-3607 (TJK), 2025 WL 522017, at *2-4 (D.D.C. Feb. 18, 2025) (finding request that yielded an estimate of 26,000 pages of records that would take about 6,500 hours to process unreasonably burdensome); *Wright v. FBI*, Civ. A. No. 18-0687 (TSC), 2024 WL 4263867, at *2-3 (D.D.C. Sept. 23, 2024) (agreeing searches that would take approximately 154,526 hours and would cost over $3.9 million, or would take 88,570 hours and cost over $2.2 million, would be unduly burdensome); *Anand v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 3600140, at *4 (D.D.C. May 23, 2023) (collecting cases and holding that a search requiring 28 years and millions of dollars "to search for records responsive to" plaintiff's FOIA request imposed undue burden); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272-74 (D.D.C. 2022) (finding request unreasonable that would take 8,151 hours, which equated to about 1,018 workdays or about two years and nine months); *Keeping Gov't Beholden, Inc. v. Dep't of Just.*, Civ. A. No. 17-1569 (FYP), 2021 WL 5918627, at *3, 7 (D.D.C. Dec. 13, 2021) (finding it unduly burdensome to process a request that would take approximately 1,059,990 minutes (or 17,666 hours) of searching); *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275-77 (D.D.C. 2014) (upholding agency's refusal to produce records when redaction process "would take more than 8,000 hours"); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (finding a search of microfilm that would take an estimated 3,675 hours and cost $147,000 to be unreasonably burdensome); *People*

6

*for the Am. Way v. Dep't of Just.*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding a search unreasonably burdensome where the agency provided an affidavit explaining that compliance would require the agency to devote 25,000 hours to manually searching all 44,000 files encompassed in the request).

Further, even if the numbers alone do not support summary judgment for Defendant, when considering the purpose behind the FOIA request, it becomes apparent that Plaintiff's request is unreasonably burdensome. *Cf. Feds for Freedom*, 2025 WL 522017, at *5 (considering the purpose of the FOIA request in deciding whether the request was unreasonably burdensome); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273 (same); *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (same).

As explained in the background section above, when Plaintiff submitted its FOIA request on April 25, 2023, a memorandum issued by Kerry Doyle, Principal Legal Advisor for ICE, was still effective. The memorandum was addressed to all Office of the Principal Legal Advisor attorneys and contained the subject *Guidance to OPLA Attorneys Regarding the Enforcement of Civil Immigration Laws and the Exercise of Prosecutorial Discretion*. *See* Mem. from Doyle (Apr. 3, 2022), https://www.ice.gov/doclib/about/offices/opla/OPLA-immigration-enforcement_guidanceApr2022.pdf. However, on January 20, 2025, the White House issued a new executive order that revoked Doyle's guidance entirely. *See Protecting the American People Against Invasion*, 2025 WL 244170 (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting- the-american- people-against- invasion/.

On January 27, 2025, two days after the White House issued the new executive order, Defendant contacted Plaintiff and asked whether Plaintiff was still interested in the FOIA request. *See* Email from Escher (Jan. 27, 2025, at 12:52 p.m.), ECF No. 22-3 at 2-3. Defendant explained

7

that the prior guidance from Doyle had been revoked entirely by the new executive order. *Id.* Defendant then followed up again with Plaintiff about the inquiry. *See* Email from Escher (Mar. 4, 2025, at 10:34 a.m.), ECF No. 22-3 at 2. Plaintiff appeared to have rejected the proposal. *See* Email from Jaroslav (Mar. 5, 2025, at 10:56 a.m.), ECF No. 22-3 at 1 ("We appreciate your offer and efforts but are unable to agree to your proposal for narrowing the scope of the search.").

Thus, Defendant is left being asked to process records related to guidance and policy that is no longer effective. When considered with the breadth of the request, how long it would take to process, and how much resources would need to be expended, the request becomes even more unreasonable.

## CONCLUSION

The Court should grant Defendant's motion for summary judgment for the reasons above.

Date:   July 1, 2025                         Respectfully submitted,

                                             JEANINE FERRIS PIRRO
                                             United States Attorney

                                             By:   */s/ Sam Escher*
                                             SAM ESCHER, D.C. Bar #1655538
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-2531
                                             Sam.Escher@usdoj.gov

                                             *Attorneys for United States of America*