UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERATION FOR AMERICAN IMMIGRATION REFORM,<br><br>      Plaintiff,<br><br>      v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>      Defendant. | Civil Action No. 23-2883 (TJK) |

## DECLARATION OF FERNANDO PINEIRO

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigrations and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA Office mailing address is 500 12th Street, SW, STOP 5009, Washington, DC 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA and Privacy Act requests received at ICE. In connection with my official duties and

responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.   Through the exercise of my official duties, I am familiar with ICE's receipt and handling of the FOIA request, dated April 25, 2023, submitted by Plaintiff in this lawsuit and the steps taken to respond to Plaintiff's FOIA requests.

4.   I make this declaration in support of ICE's motion for summary judgment.

5.   The statements contained in this declaration are based upon my personal knowledge, my review of the documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

I.   **ICE FOIA's Standard Procedures for Processing FOIA Requests**

6.   When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

7.   Proper FOIA requests are entered into a database known as SecureRelease and assigned a case tracking number. Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

8.   ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to the Office of Public Affairs, the Office of Enforcement and Removal Operations, the Office of Professional Responsibility, the Office of the Director, the Office of the Principal Legal Advisor ("OPLA"), and the Chief Financial Officer. The program offices are typically staffed with a designated point of contact ("POC"), who is the primary person responsible

for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

9. Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

10. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs,

CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

11.     Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files – some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

12.     Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

13.     Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

## II.     Progress in this Litigation

14.     On September 28, 2023, Plaintiff filed a complaint against ICE seeking production of documents responsive to Plaintiff's FOIA request, dated April 25, 2023.

15.     On November 28, 2023, ICE conducted a search of all Kerry Doyle's emails pursuant to Plaintiff's FOIA request in order to search for potentially responsive records.

16.     The first prong of Plaintiff's FOIA request seeks, "(1) All emails from Kerry Doyle, Principal Legal Advisor, that references or mentions deportations from September 20, 2021, to April 25, 2023." The search term "deportations" within the time parameters yielded 35,677 pages (excluding excel spreadsheets).

17.     The second prong of Plaintiff's FOIA request seeks, "(2) All emails from Kerry Doyle, Principal Legal Advisor, that references or mentions prosecutorial discretion from March 1, 2021, to April 25, 2023." The search term "prosecutorial discretion" within the time parameters yielded 60,906 pages (excluding excel spreadsheets).

18.     The parties have tried to confer about narrowing the scope of Plaintiff's request but have not been successful. *See* Ex. A – Emails. Defendant is therefore moving for summary judgment. As is, Plaintiff's request does not reasonably describe the records requested because it is overbroad and would be unreasonably burdensome to process.

**III.    Current Workload of The ICE FOIA Litigation Processing Unit**

19.     The increasing complexity and volume of ICE FOIA's workload and backlog creates the potential that some FOIA requests could become subject to litigation in federal district court.

20.     The ICE FOIA Litigation Processing Unit's workload has increased such that as of June 2025, it is handling 186 active FOIA litigations, of which 98 litigations have monthly rolling productions. ICE's normal processing rate for cases in litigation is 500 pages or 5 minutes of media files, per month, per case. This means, on average, the ICE FOIA Litigation Unit is currently processing approximately 49,000 pages of potentially responsive records per month.

21.     The ICE FOIA Litigation Processing Unit also drafts search taskings, as well as assigns, and tracks any and all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and

require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices.

22.     The ICE FOIA Litigation Processing Unit has collateral duties, in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statistical tracking, responds to congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. Additionally, the processing unit supports OPLA attorneys with FOIA litigation by assisting in the creation of *Vaughn* indices, reviewing declarations, and coordinating on joint status reports to the court.

23.     To meet its obligations for all cases in litigation by ensuring that all FOIA matters progress and each requester receives a response, the ICE FOIA Office typically cannot process more than 500 pages or 5 minutes of media files per month per case. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

24.     Moreover, the ICE FOIA Office typically cannot produce a set number of pages per month. Depending on the volume of records located in response to the search tasking phase of the administrative stage and/or FOIA litigation, if the Court orders ICE FOIA to "produce" rather than "review" or "process" a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of a 500-page processing rate in order to identify the requisite number of responsive pages to meet the production goal. ICE FOIA is incapable of achieving this outcome based on its finite resources, competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

25. Responding to the Plaintiff's FOIA request in its current, broadly worded form would first require sifting through all search results to identify any potentially responsive records. ICE's search produced an overwhelming number of duplicative and non-responsive records. ICE has provided the Plaintiff with representative samples of the retrieved raw documents (not reviewed for responsiveness) in order to illustrate the nature of non-responsive records and the amount of work that would need to be undertaken by ICE FOIA before responsive records could be identified and processed for release, without further narrowing. ICE provided Plaintiff with this sample via email on February 29, 2024. *See* Ex. A – Emails at 8-9.

26. Further, requiring ICE to process the estimated 96,583 pages yielded in ICE's search would divert ICE FOIA's limited resources to Plaintiff's FOIA request at the expense of other FOIA requesters and is likely to incur additional liability for the agency with respect to unprocessed records in other cases.

27. At a standard rate of 500 pages per month, it would take one ICE FOIA Office employee more than 16 years to finish reviewing the combined 96,583 pages from the "deportations" and "prosecutorial discretion" search results. No ICE FOIA employee can be assigned solely to one case, as this would restrict their ability to manage the ICE FOIA Office's workload effectively. It is essential for ICE FOIA employees to handle multiple cases to ensure a balanced distribution of production review.

28. The individuals who process FOIA records in litigation in my office range from GS-9 to GS-15. If ICE were to assign one GS-12, Step 1 employee, at the salary of $101,401.00 to review the records, allotting 10% of their workload to Plaintiff's FOIA Request, it would cost ICE a total of more than $162,241.00 in salary alone, per employee, over the 16 years it would take that one employee to complete the review and processing of the records, (i.e., [($101,401 x

7

16 years) x (10%)]). This figure does not account for the fact that the employee would generally receive pay increases as they climb the GS scale.

29.     Additionally, each ICE production also requires a review by an ICE FOIA litigation supervisor. The supervisor conducts a second-line review of all the records to ensure consistency and accuracy. Further, each ICE production requires a final line-by-line review by an OPLA attorney. The attorney reviews all the records to determine the legal sufficiency of the withholdings. These two required additional layers of review further increase the actual total cost to process Plaintiff's FOIA request.

30.     Therefore, processing this case would cost the agency hundreds of thousands of dollars due to the need to review an overwhelming volume of records that potentially contains a significant number of non-responsive records, which would hamstring ICE FOIA operations and adversely affect its ability to process other FOIA cases, undermining the very purpose of the FOIA.

31.     ICE respectfully requests that the Court issue a summary judgment in favor of Defendant.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


<u>June 23, 2025</u>
Date

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009